J-S63016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: K.E.S. AND E.B.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.-S.P., MOTHER | No. 1003 MDA 2014 |

Appeal from the Decree entered May 8, 2014,
in the Court of Common Pleas of Lancaster County, Orphans'
Court, at No(s): 0403-2014; 0404-2014

BEFORE:    BOWES, J., PANELLA, J., and PLATT, J.*

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 19, 2014**

N.-S.P. ("Mother") appeals the decree entered on May 8, 2014, which granted the petition filed by Lancaster County Children and Youth Services ("CYS") to involuntarily terminate Mother's parental rights to her minor female child, K.E.S. (born in October of 2008) and to her minor male child, E.B.S. (born in November of 2011), collectively ("Children"), pursuant to section 2511(a)(2) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (b).  We affirm.[1]

On February 24, 2014, CYS filed a petition for involuntary termination of Mother's parental rights of Children.  At the time of the termination hearing, K.E.S. was almost six years old and E.B.S. was almost three years old.  The Children went into the custody of CYS in August 2012.  The court

---

* Retired Senior Judge assigned to Superior Court.

[1] A hearing for both fathers, B.S., Jr., who is K.E.S.'s father, and M.J., who is E.B.S.'s father, was continued to June 2, 2014, to allow them to proceed under the procedure for voluntary termination of parental rights, rather than involuntary termination of parental rights.

declared the Children to be dependent on November 1, 2012. Mother was not married to either of the fathers, K.E.S. or M.J.

The initial reason for the placement was that K.E.S was found wandering alone on the street in Ephrata. Mother had left Children in the care of a 12-year-old girl in Mother's home in order to visit her fiancé, L.F., in prison in Camp Hill, some distance from Ephrata. The babysitter had no phone available and the police were unable to contact Mother or K.E.S.'s father.

Mother was given a permanency plan, but it was not completed. Mother's plan contained objectives of mental health and alcohol treatment, parenting, financial stability, housing, and commitment. Mother had finished the ninth grade and had no permanent housing.

At the time of the termination hearing, Mother was living with L.F. and was pregnant with his child. They had separated early in the pregnancy, but were living together again at Maternal Grandmother's apartment. Maternal Grandmother was expected to go to jail for drug dealing and Mother and L.F. would continue to live at Maternal Grandmother's apartment and pay rent, which was $600.00 per month. Although Mother was unemployed at the time of the hearing, she testified that she was registered with two temporary employment agencies, and that she was looking for work. Mother further testified that she received cash assistance and food stamps and that she has a pending Social Security appeal. Mother testified that L.F. has two jobs, and that he also assists her Pastor doing construction work. Mother stated

that L.F. makes approximately $800.00 every two weeks and that the two of them would be able to pay the rent for Maternal Grandmother's apartment.

On May 8, 2014, the trial court entered the decree terminating Mother's parental rights to the Children. This timely appeal followed. On appeal, Mother present four issues:

1. Whether the [c]ourt erred when it terminated Mother's rights?

2. Whether the [court] erred in concluding that Mother had, by conduct continuing for more than six (6) months, evidenced a settled purpose of relinquishing parental claim to the [C]hildren and had refused or failed to perform her parental duties?

3. Whether the court erred in concluding that the evidence clearly and convincingly established that the repeated and continued incapacity, neglect, or refusal Mother had caused the [C]hildren to be without essential parental care, control and subsistence necessary for their physical and mental well-being[,] and that the conditions and causes of the incapacity, neglect, or refusal cannot or will not be remedied by Mother?

4. Whether the trial court erred in finding that terminating Mother's parental rights would best serve the needs and welfare of the Children?

Mother's Brief at 8.

Initially, we review the termination decree according to the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often

- 3 -

stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we discussed …, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 4 -

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the decree terminated Mother's parental rights pursuant to section 2511(a)(1), (2), (5), (8), and (b). This Court must agree with only one subsection of 23 Pa.C.S.A. § 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to § 2511(a)(1) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parents by conduct continuing for a period of at least six months immediately preceeding the filing of this petition either have evidenced a settled purpose of relinquishing parental claim to said children or have refused or failed to perform parental duties.
>
>> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence regarding whether he or she has evidenced a settled purpose of relinquishing parental claim to said children or have refused or failed to perform parental duties. **See In the Matter of the Adoption of R.K.Y. et al**, 2013 PA Super 202, (2013) (citing **In re T.M.T.**, 64 A.3d 229 (Pa. Super. 2013)). In the termination proceeding, the focus is on the conduct of the parent. **See In re B., N.M.**, 856 A.2d 847, 854-855 (Pa. Super. 2004).

In this case, Mother's troubled history is well documented in the record. Mother's parenting skills and concern as a parent are minimal. She has not managed to finish her reunification plan over a period of 6 months or even twenty months. Although Mother has made some progress with her mental health and drug usage problems, none of the items in Mother's plan have been completed. The trial court found that, until Mother completes the plan, success cannot be declared, and that the importance of the service plan and the goal it identifies for the Children cannot be overemphasized. After a careful review of the record, we find no merit to Mother's argument concerning § 2511(a)(1).

Mother's issues also challenge the sufficiency of the evidence to support the termination of her parental rights under section 2511(b). In

reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In reviewing the case, the trial court found that Mother cannot care for the Children's needs because she still has serious drug and alcohol, mental health, housing, and employment problems which have not been resolved. In addition, with regard to section 2511(b), the evidence reveals that Mother does not have a strong bond with the Children. On the other hand, the evidence reveals that the Children have a strong emotional bond with their foster parents who take care of all of their needs. The trial court found that there is no evidence that either child would be adversely affected if their relationship with Mother is severed.

The competent evidence in the record shows Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting…." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa.

Super. 2008). She did not put herself in a position to assume daily parenting responsibilities so that she could develop a real bond with the Children. *See In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

Although Mother may love the Children and desire an opportunity to serve as their mother, *see* N.T., Hearing, 7/12/13, at 59, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life simply cannot be put on hold in the hope that a parent will summon, someday, the ability to parent responsibly. *See In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008). Rather, "a parent's basic constitutional right to the custody and rearing of … [his] children is converted, upon the failure to fulfill … parental duties, to the children's right to have proper parenting and fulfillment of [the children's] potential in a permanent, healthy, [and] safe environment." *In re B., N.M.*, 856 A.2d at 856 (internal citations omitted).

Accordingly, we affirm the decree terminating Mother's parental rights to Children on the basis of the trial court's Opinion Dated August 4, 2014.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2014